UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY HERNANDEZ,<br><br>        Plaintiff,<br><br>   v.<br><br>A. MARTINEZ,<br><br>        Defendant. | Case No.: 1:10-cv-01064-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RELATING TO EXHAUSTION OF THE ADMINISTRATIVE REMEDIES<br><br>[ECF No. 50]<br><br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff Tony Hernandez is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

This action is proceeding against Defendant A. Martinez for two separate incidents of excessive force in violation of the Eighth Amendment.

On April 22, 2015, Plaintiff filed a motion for summary judgment relating to the merits of Plaintiff's claim.  (ECF No. 49.)  On May 14, 2015, the Court granted Defendant's request to stay the obligation to oppose Plaintiff's motion for summary judgment in light of the pending motion for summary judgment relating to exhaustion of the administrative remedies (a jurisdictional ruling).

///

///

///

1

On May 5, 2015, Defendant Martinez moved for summary judgment on the ground that Plaintiff failed to exhaust the administrative remedies regarding his excessive force claim.[1] Pursuant to Local Rule 230(*l*), Plaintiff did not file an opposition, and because more than twenty-eight days have elapsed since the filing and service of the motion, the motion is deemed submitted to the Court for review.

# I.

# DISCUSSION

### A.     Motion for Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at

---

[1] Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. ECF No. 50-7; see Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411-412 (9th Cir. 1988).

387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### B. Exhaustion under the Prisoner Litigation Reform Act

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion. Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings. Albino, 747 F.3d at 1170. If

///

1  the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without
2  prejudice. Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

3  The California Department of Corrections and Rehabilitation (CDCR) has an administrative
4  grievance system for prisoners to appeal any departmental decision, action, condition, or policy having
5  an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. Prior to 2011, the process
6  was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15,
7  § 3084.2(a), and appeal had to be submitted within fifteen working days of the event being appealed or
8  of the receipt of the unacceptable lower level decision, tit. 15, § 3084.6(c). Up to four levels of appeal
9  may be involved, including the informal level, first formal level, second formal level, and third formal
10 level, also known as the Director's Level. Tit. 15, § 3084.5. In order to satisfy section 1997e(a),
11 California state prisoners are required to use this process to exhaust their claims prior to filing suit.
12 Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201. On January 28,
13 2011, the inmate appeals process was modified and limited to three level of review with provisions
14 allowing the first level to be bypassed under specific circumstances. Cal. Code Regs. tit. 15, § 3084.7.

15 "[E]xhaustion is not per se inadequate simply because an individual later sued was not named
16 in the grievances." Jones v. Bock, 549 U.S. 199, 219 (2007). "The level of detail necessary in a
17 grievance to comply with the grievances procedures will vary from system to system and claim to
18 claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper
19 exhaustion." Id. In California, the courts have previously found that CDCR guidelines do not need to
20 identify the defendants by name because the proper form and CDCR regulations do not require
21 identification of specific individuals. See, e.g., Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).
22 However, as of January 2011, inmates are required to list all staff members involved and describe their
23 involvement, include only one issue or related set of issues per appeal, and "describe the specific issue
24 under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a)(1)-(4) (Jan. 28, 2011).

25 **C.    Allegations of Complaint**

26 On March 12, 2010, Plaintiff was placed in a holding cell at Pleasant Valley State Prison
27 (PVSP) because he was accused of indecently exposing himself to a female Licensed Psychiatric
28

4

Technician (LPT) M. Martinez[2] while she was conducting her rounds. While Plaintiff was in the holding cell, he attempted suicide in an effort to keep his family from visiting him due to an enemy situation. Plaintiff tore a strip of fabric from his shirt and wrapped it tightly around his neck and tied a knot. Plaintiff wrapped the fabric around his neck again and tied a second knot. Defendant, officer A. Martinez, was stationed approximately six feet from the holding cell. A. Martinez ordered Plaintiff to stop; however, Plaintiff continued his actions. Defendant, allegedly infuriated with Plaintiff's injurious conduct, emptied an entire can of pepper spray in Plaintiff's face. Plaintiff contends Defendant should have activated the alarm instead of pepper spray to stop his suicide attempt.

On April 9, 2010, Defendant A. Martinez threatened Plaintiff that he would mace Plaintiff again and beat him "until he cried like a little girl." On May 3, 2011, Defendant A. Martinez carried out his threat to again mace Plaintiff, when he requested legal photo copies of legal documents. Defendant A. Martinez opened the tray slot to Plaintiff's cell and threw the briefs into the cell. When Plaintiff reached down to pick up the papers, Defendant A. Martinez sprayed Plaintiff's back with mace and directed the chemical agent onto the legal documents, stating "you['re] going to remember this day walked to the top of the stairs yelling I need a team." Plaintiff's cellmate began screaming that he could not breathe because he was allergic to make. In response, Plaintiff began kicking the door to get medical and staff attention. Defendant A. Martinez then returned to continue spraying more mace into the cell through the food tray slot. The mace covered Plaintiff's face, chest, and back.

Defendant A. Martinez attempted to have Plaintiff's cellmate confirm that Plaintiff threatened Defendant A. Martinez. However, Plaintiff's cellmate responded that A. Martinez sprayed them for no reason. Defendant A. Martinez charged Plaintiff with assault on staff. As a result, Plaintiff was found guilty of a 115 Rules Violation Report assault on staff.

The Court's screening order (ECF No. 23, Findings and Recommendations (F&R), ECF No. 27, F&R adopted in full) found that Plaintiff stated a cognizable claim against officer A. Martinez for excessive force on two separate occasions, namely, March 12, 2010 and May 3, 2011. Defendant's present motion for summary judgment addresses only the first incident of use of force on March 12,

---

[2] LPT M. Martinez was dismissed from the action for failure to state a cognizable claim for relief. (ECF Nos. 23, 27.)

2010, and the May 3, 2011, is not subject to Defendant's instant motion for summary judgment for lack of exhaustion.

### D. Statement of Undisputed Facts[3]

1. At all times relevant to Plaintiff's claims in his second amended complaint, he was an inmate incarcerated at Pleasant Valley State Prison (PVSP).  (ECF No. 22, Second Amd. Compl. at 2-3.)

2. At all times relevant to the second amended complaint, Defendant correctional officer A. Martinez was employed by the California Department of Corrections and Rehabilitation (CDCR), and worked as a law library correctional officer.

3. On March 12, 2000, Plaintiff was placed in a holding cell at PVSP because he was accused of indecently exposing himself to a female Licensed Psychiatric Technician M. Martinez[4] while she was doing her rounds.  (Id. at 5.)

4. While Plaintiff was in the holding cell, he attempted suicide in an effort to keep his family from visiting him due to an enemy situation.  Plaintiff tore a strip of fabric from his shirt and wrapped it tightly around his neck and tied a knot.  He wrapped it around his neck again and tied a second knot.  (Id. at 6-7.)

5. Defendant was stationed approximately six feet from the holding cell.  He ordered Plaintiff to stop; however, Plaintiff continued his self-harming actions.  Defendant, allegedly infuriated with Plaintiff's injurious conduct, emptied an entire can of pepper spray in Plaintiff's face.  Plaintiff contends Defendant should have used his alarm, rather than pepper spray, to stop his suicide attempt.  (Id. at 7-8.)

---

[3] Because Plaintiff did not file an opposition, he neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by defendant as undisputed.  Local Rule 56-260(b).  Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified second amended complaint.  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); see also Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

[4] As previously stated, LPT M. Martinez was dismissed from the action for failure to state a cognizable claim for relief.  (ECF Nos. 23, 27.)

6. Plaintiff, who was aware that CDCR provided an inmate grievance system, confirms that his grievance, logged as Institutional log no. PVSP-27-10-15435, is the appeal relevant to his March 12, 2010 claim against Defendant correctional officer A. Martinez. This appeal was initiated on October 11, 2010; seven months after the incident, and four months after he filed suit. (Id. at 2 ¶ B; 3 ¶ B; and 19-27.)

7. Plaintiff submitted his grievance on a CDCR 602-HC Inmate/Parolee Health Care Appeal Form, which clearly states that it is to be used by an inmate to "appeal any policy, action, or decision," that "involves health care services (medical, dental or mental health)." (Id. at 20; S. Navarro Decl. ¶¶ 7 & 8, Ex. A.)

8. Since August 2008, CDCR's prison health care system has operated under a Federal Receiver appointed in the Plata v. Schwarzenegger class action litigation. (R. Robinson Decl. ¶ 3; M. Voong Decl. ¶ 4.)

9. Because the Federal Receiver oversees the operation of CDCR's prison health care system, medical staff and the services they provide are under the supervision of the institution's Chief Executive Officer of Medical Services. Custody staff, however, are under the supervision of the institution's Warden. (R. Robinson Decl. ¶ 3; M. Voong Decl. ¶¶ 4 & 6.)

10. CDCR has two appeal processes available to inmates; one for health care and another for non-health care issues. (R. Robinson Decl. ¶ 5; M. Voong Decl. ¶ 6.)

11. Depending upon the subject of the appeal, the inmate must utilize either a Form CDCR 602 (for non-health care grievances) or CDCR 602-HC (for health care grievances). (R. Robinson Decl. ¶ 3; M. Voong Decl. ¶ 5.)

12. This separate appeal process is a direct result of the appointment of the Federal Receiver over CDCR's prison health care system whereby an institution's Warden supervises custody staff and the Chief of the Office of Appeals (OOA), has sole responsibility for third-level custody staff appeals. (R. Robinson Decl. ¶ 3; M. Voong Decl. ¶ 6.)

13. The OOA does not have jurisdiction over health-care grievances and does not accept and adjudicate health-care related appeals. (M. Voong Decl. ¶ 6.)

14. The institution's Chief Medical Executive, and ultimately, the Chief of the Inmate Correspondence & Appeal Branch (on behalf of the Director of Policy and Risk Management Services), have sole responsibility over health care staff and health-care related grievances. (R. Robinson Decl. ¶¶ 1 & 3.)

15. Defendant A. Martinez is a correctional officer, and his alleged use of force is a custody issue, not a health care services issue. (S. Navarro Decl. ¶ 5; Morgan Decl. ¶ 5.)

16. Any issue regarding custody staff must be appealed on a CDCR Form 602 and custody appeals are screened at the first and second level by the institution's Appeals Coordinator. (J. Todd Decl. ¶ 5; M. Seaman Decl. ¶ 5.)

17. Any issue regarding health care services and care must be appealed on a CDCR Form 602-HC. Health care appeals are then screened by the institution's Health Care Appeals Coordinator at the first and second level of review. (S. Navarro Decl. ¶ 5; J. Morgan Decl. ¶ 5.)

18. Plaintiff's 602-HC Appeal, PVSP-27-10-15435, was signed by Plaintiff on October 11, 2010 and stamped as received by Health Care on October 26, 2010. The Informal level of review was bypassed. (S. Navarro Decl. ¶ 9, Ex. A.)

19. Plaintiff's health care appeal, PVSP-27-10-15435, was received at the First Level of Review on November 23, 2010. In Part A, Plaintiff stated that chemical agents were used and that "staff are responsible for neck and shoulder injury." In Part B, Plaintiff requested pain meds and a hydrocortisone injection to deal with shoulder pain resulting from staff hyperextending his right arm when they dragged his unconscious body from the holding cell. Plaintiff did explain that his pain had increased since his self-inflicted hanging when staff dragged his body. He also stated that prison officials used excessive force. Plaintiff's appeal did not request that any action be taken against any correctional staff. Plaintiff's 602-HC appeal was partially granted at the First Level on

8

December 14, 2010.  The First Level Response states that the "patient was seen (11/18/10) pain meds are addressed PT and MRI were ordered at this time steroid inj. may not be beneficial."  (S. Navarro Decl. ¶ 9; Ex. A.)

20. When inmates are dissatisfied with the First Level Response, they must request a Second Level Appeal Review, by following the instructions on the 602-HC appeal form and submit the form to the Health Care Appeals coordinator for processing.  (S. Navarro Decl. ¶ 10; Ex. A.)

21. On December 20, 2010, Plaintiff requested a Second Level Appeal Review for PVSP-27-10-15435, his healthcare appeal, because his shoulder injury was worsening therefore he was requesting surgery.  (S. Navarro Decl. ¶ 11; Ex. A.)

22. On January 28, 2011, Plaintiff's 602-HC appeal was partially granted at the Second Level.  The Second Level Response summarizes Plaintiff's appeal issue as medical and details the medical care Plaintiff received.  It also states "inmates may not demand particular medication, diagnostic evaluation, or course of treatment."  It further states "[y]our complaints against staff are in violation of time constraints and are not medical issues."  (S. Navarro Decl. ¶ 12; Ex. B.)

23. Plaintiff was dissatisfied with the Second Level Response and submitted his health care appeal for Director's Level Review on February 6, 2011.  (R. Robinson Decl. ¶ 9; Ex. H.)

24. At the Director's Level, Plaintiff's appeal was assigned Tracking/Log No. PVSP HC 11005840.  (R. Robinson Decl. ¶ 9.)

25. Plaintiff's stated reason for requesting a Third Level Review was that he was in agreement with the doctor's assessment of his injury and that he was, again, requesting surgery.  (R. Robinson Decl. ¶ 10; Ex. H.)

26. Plaintiff's health care appeal was denied at the Third Level on August 4, 2011.  The Third Level Response confirmed that Plaintiff's appeal issues were medical, and specifically advised Plaintiff to "submit a CDC 602 (custody appeal) to address [his] issue with the CDC 115 issue."  (R. Robinson Decl. ¶ 10; Ex. I.)

27. Upon receipt of the Director's Level Response, as explicitly stated in the 602-HC itself, Plaintiff was on notice that his 602-HC appeal only addressed his medical issues, not his issue with custody staff. (R. Robinson Decl. ¶10; Ex. I.)

28. The applicable regulations governing appeal PVSP-27-10-15435, were updated on October 15, 2009. While this grievance was proceeding through the first, second, and third levels of review, the regulations were amended on January 28, 2011, and adopted on July 28, 2011. (R. Robinson Decl. ¶¶ 6 & 13; M. Voong ¶ 9.)

29. Under the October 15, 2009 regulations, Plaintiff had fifteen calendar days from the event or decision being appealed to submit a grievance. Cal. Code Regs. tit. 15, § 3084.6(c) (Oct. 15, 2009). Plaintiff had thirty calendar days from the August 4, 2011 Director's Level Response, to submit an appeal grieving his custody staff issue on a CDCR Form 602. Cal. Code Regs. tit. 15 § 3084.6(c) (July 28, 2011).

30. Under CDCR's regulations, inmates are required to first submit an appeal within fifteen working days of the event or decision they are grieving, and then proceed to the highest administrative level of review available before seeking judicial relief. Cal. Code Regs. tit. 15, § 3084.6(c);3084.1(a). For purposes of California's inmate appeals process, in most instances exhaustion is achieved upon a decision at third, and final level, also known as the Director's Level. (R. Robinson Decl. ¶ 6, Voong Decl. ¶ 2.)

31. Plaintiff filed three non-healthcare grievances which originated from PVSP and were addressed through the Third Level between March 12, 2010 and July 12, 2013.

32. In appeal PVSP-S-10-00663, Plaintiff complained that his due process rights were violated regarding the Rules Violations Report he received from non-party M. Martinez on March 12, 2010, for Indecent Exposure. Plaintiff initially signed and submitted this grievance on May 20, 2010. It was denied at the Third Level on February 28, 2011. (J. Morgan Decl. ¶ 8; Ex. D; M. Voong Decl. ¶ 13, Ex. J.)

33. In appeal PVSP-S-10-00889, Plaintiff complained that his due process rights were violated regarding the Rules Violations Report he received for his March 10, 2010 participation in a riot. Plaintiff initially signed and submitted this grievance on May 20,

10

|   |   |   |
|---|---|---|
| 1 |  | 2010.  It was denied at the Third Level on April 13, 2011.  (J. Morgan Decl., ¶ 9, Ex. E; |
| 2 |  | M. Voong Decl. ¶ 14, Ex. K. |
| 3 | 34. | In appeal PVSP-S-11-01168, Plaintiff complained that his due process rights were |
| 4 |  | violated regarding the Rules Violations Report he received from Defendant A. Martinez |
| 5 |  | on May 3, 2011, for Assault on a Peace Officer.  Plaintiff initially signed and submitted |
| 6 |  | this grievance on July 29, 2011.  It was granted in part at the Third Level on April 6, |
| 7 |  | 2012.  (J. Morgan Decl. ¶ 10, Ex. F; M. Voong Decl. ¶ 15, Ex. L.) |
| 8 | 35. | Plaintiff submitted a 602 appeal on April 16, 2010, requesting written statements from |
| 9 |  | two doctors regarding his allegations against LPT M. Martinez and the Rules Violation |
| 10 |  | Report he received on March 12, 2010 for Indecent Exposure. |

**E.     Findings**

Defendant moves for summary judgment on the ground that there is no genuine dispute of material fact that Plaintiff failed to complete the administrative review process in accordance with the applicable procedural rules, including deadlines, before he filed suit.

On the face of the second amended complaint, Plaintiff acknowledges that an administrative grievance process was available to him.  (ECF No. 22, Second Amd. Compl. at 2 ¶ B; and 19-27.) Plaintiff also indicates that he exhausted the available administrative remedies.  (Id.)  To prove exhaustion, Plaintiff attaches Exhibits B and C to his second amended complaint-the grievance forms he contends demonstrate exhaustion of the administrative remedies regarding the March 12, 2010, use of force claim against Defendant A. Martinez.  (Id. at 19-33.)

    1.     <u>Inmate Appeal Log Number PVSP-27-10-15435</u>

Inmate appeal log number PVSP-27-10-15435 was submitted on a CDCR 602-HC Inmate/Parolee Health Care Appeal Form.  (Navarro Decl. ¶ 7, Ex. A.)  The appeal was initially submitted on October 11, 2010-approximately four months after Plaintiff filed the original complaint in this action on June 5, 2010, and this grievance was subsequently reviewed at the Third Level on August 2, 2011.  (Navarro Decl. ¶ 9, Ex. A; R. Robinson Decl. ¶ 10, Ex. I.)  Because this appeal was filed approximately four months after Plaintiff initiated the instant action, it did not exhaust the

11

1 administrative remedies prior to filing suit.  See McKinney, 311 F.3d at 1200-1201 (dismissal without
2 prejudice warranted when there is no pre-suit exhaustion).

3       In addition, Plaintiff's appeal PVSP-27-10-15435, was submitted on a CDCR 602-HC
4 Inmate/Parolee Health Care Appeal Form, which clearly states it is to be used by an inmate to "appeal
5 any policy, action, or decision" that "*involves health care services (medical, dental or mental health)*."
6 (ECF No. 22, Second Amd. Compl. at 20; S. Navarro Decl. ¶¶ 7 & 8; Ex. A.) (emphasis added.)  In
7 Part A, Plaintiff stated that, in relevant part, administrative segregation staff engaged in (use of force)
8 with chemical agents to remove Plaintiff and that "staff are responsible for neck and shoulder injury."
9 (S. Navarro Decl. ¶ 9; Ex. A.)  In Part B, Plaintiff requested pain medications and a hydrocortisone
10 injection to deal with shoulder pain resulting from staff hyperextending his right arm when they
11 dragged his unconscious body from the holding cell.  (Id.)

12       On December 14, 2010, Plaintiff's 602-HC appeal was partially granted at the First Level.  (S.
13 Navarro Decl. ¶ 9; Ex. A.)  Plaintiff was interviewed by a Physician's Assistant, was given a referral
14 for physical therapy and an MRI, pain medication was addressed, and a hydrocortisone injection was
15 deemed not medically necessary.  (S. Navarro Decl. ¶¶ 9 & 12, Exs. A & B.)  Plaintiff was
16 dissatisfied, and submitted his request for Second-Level Review to the Health Care Appeals
17 coordinator seeking an "emergency operation on damaged rotor cup excessive use of force."  (S.
18 Navarro Decl. ¶ 11, Ex. A.)

19       On January 28, 2011, Plaintiff's 602-HC appeal was partially granted at the Second Level.  (S.
20 Navarro Decl. ¶ 12, Ex. B.)  The Second Level Response summarizes Plaintiff's appeal issue as
21 *medical*.  (Id.)  Furthermore, and relevant to the motion at hand, the response states, "[y]our
22 complaints against staff are in violation of time constraints and are not medical issues."  (Id.)

23       Plaintiff was dissatisfied with the response and submitted his appeal for Director's Level
24 Review.  (R. Robinson Decl. ¶ 9, Ex. H.)  In his request for Director's Level review, Plaintiff indicated
25 his agreement with the doctor's assessment and request to receive surgery due to his extreme pain and
26 suffering.  (Id.)  Thus, the request for Third Level review did not identify any issue concerning
27 Defendant A. Martinez, or any correctional staff, and/or the use of force as a reason for his
28 dissatisfaction with the Second Level Response.  (R. Robinson Decl. ¶ 10, Ex. H.)

1   Plaintiff's health care appeal was denied at the Director's Level review on August 4, 2011. (R.
2   Robinson Decl. ¶ 10, Ex. I.) The Third Level Response identified and addressed the issue presented
3   and stated, "Your CDCR 602-HC indicated you submitted four Health Care Services Request Forms
4   (CDC 7362) regarding your neck and shoulder pain. You stated you have nerve spasms which made
5   your arms and hands paralyzed and then you had extreme pain. After March 12, 2010, an incident
6   with Correctional staff and self- inflicted hanging increased your pain. You requested the following:
7   Your pain medication be renewed. Hydrocortisone injection to your shoulder joint." (Id.) In denying
8   Plaintiff's inmate, the Third Level response confirmed that Plaintiff's appeal issues were medical and
9   specifically advised Plaintiff to "submit a CDC 602 (custody appeal) to address your issue with the
10  CDC 115 issue." (Id.)
11   An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem
12  for which the prisoner seeks redress. Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010) (citing
13  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (internal quotation marks omitted). "[T]he
14  prisoner need only provide the level of detail required by the prison's regulations," and prior to
15  January 28, 2011, "[t]he California regulations require[d] only that an inmate describe the problem and
16  the action requested." Sapp, 623 F.3d at 824 (citations and internal quotation marks omitted). While
17  the standard provides a low floor, it advances the primary purpose of a grievance, which is to notify
18  the prison of a problem. Griffin, 557 F.3d at 1120 (quotation marks and citations omitted); accord
19  Akhtar v. Mesa, 698 F.3d 12020, 1211 (9th Cir. 2012). Although Plaintiff contends that this inmate
20  appeal exhausted his administrative remedies as to his claim against Defendant A. Martinez regarding
21  the March 12, 2010 use of force, it is apparent from the face of the Director's Level Response, that the
22  602-HC appeal addressed only Plaintiff's medical claims, and did not address or exhaust any issues
23  with custody staff related to any alleged use of excessive force.
24   Pursuant to the CDCR regulations, use of force allegations by custody staff, is a custody issue
25  that must be appealed on a CDCR Form 602- which are screened by the institution's appeal
26  coordinator. (S. Navarro Decl. ¶ 5; J. Morgan Decl. ¶¶ 1 & 5; see also Cal. Code Regs., tit. 15 §
27  3084.2(a).) Issues with health care services must be appealed on a CDCR Form 602-HC, and are
28  screened by the institution's health care appeals coordinator. (Id.) It is undisputed that the

1  administrative remedies for nonmedical grievances are distinct from those for medical grievances, and
2  despite Plaintiff's knowledge and advisement of the distinction, Plaintiff appealed and exhausted only
3  a healthcare appeal relating to issues and individuals not present in the instant action.

4        Plaintiff utilized the correct healthcare appeal form for his medical issues, but he was required
5  to use a different Form 602 for his use of force claim and he failed to do so. Accordingly, Plaintiff's
6  medical issues, which were the reason for his October 11, 2010 healthcare appeal, were addressed
7  adequately by way of a Form 602-HC. However, any use of force claims he was arguably asserting
8  against correctional staff were not addressed and the Second and Third Level responses advised him of
9  this. Thus, upon receipt of the Second Level response and the Director's Level response, as explicitly
10 stated in the 602-HC itself, Plaintiff was on notice that his 602-HC appeal only addressed his medical
11 issues, not any issue with custody staff. (S. Navarro Decl. ¶ 12, Ex. B; R. Robinson Decl. ¶ 10, Ex. I.)
12 Thus, Plaintiff's appeal, PVSP-27-10-15435, was not sufficient to put the prison on notice of a
13 potential use for claim involving Defendant A. Martinez, and Plaintiff's healthcare appeal makes clear
14 at every level of review that he requested his neck and shoulder conditions to be addressed, not that he
15 sought redress for a use of force claim against custody staff.

16       Although Plaintiff's health care appeal states "Ad. Seg. staff engaged in use of force with
17 chemical agents," and that staff were responsible for his neck and shoulder injury, these statements
18 were submitted as an explanation for his injury. Plaintiff's grievance does not state that Defendant A.
19 Martinez's, or any correctional staff's, use of chemical agents was excessive, nor does Plaintiff request
20 that action be taken against Defendant A. Martinez, or any correctional staff, regarding this incident.
21 (R. Robinson Decl., Exs. H-I.) Plaintiff's belief that he has exhausted his administrative remedies
22 with respect to his excessive force claim against Defendant A. Martinez arising on March 12, 2010, is
23 mistaken and contrary to the evidence submitted by Defendant.

24       2.    <u>Inmate Appeal Submitted to Informal Review on April 16, 2010</u>

25       In the alternative, Plaintiff contends that a 602 appeal submitted at the informal level on April
26 16, 2010, and granted in part on May 27, 2010, further substantiates his claim that he exhausted the
27 administrative remedies against Defendant A. Martinez. (ECF No. 22, Second Amd. Compl. at 28-33;
28 ECF No. 40 at 1:22-28; S. Navarro Decl. ¶ 13, Ex. C.) However, in this inmate appeal, Plaintiff

grieved the incident involving non-party LPT M. Martinez and the Rules Violation Report he received for Indecent Exposure. (Id.) There is no mention of any use of excessive force by Defendant A. Martinez. (Id.) Indeed, the informal response states:

> Partially Granted: I interviewed Dr. Martin, who corroborated the statement that when he interviewed LPT Martinez, she admitted that she had not announced her presence, did not knock on the door when she returned to Inmate Hernandez' cell and caught him with his pants down. He could not have been exposing himself because he was not aware she was there.

(S. Navarro Decl., Ex. C.)

Thus, this grievance did not grieve any facts relating to the use of force by Defendant A. Martinez on March 12, 2010, as it involves only non-party LPT **M.** Martinez's action regarding an incident that preceded the alleged use of force by Defendant A. Martinez - which is not a claim in this action. This informal level response was responding to Plaintiff's request regarding his allegations against LPT M. Martinez and the Rules Violation Report he received for Indecent Exposure. (S. Navarro Decl., Ex. C.) This appeal does not mention any use of force by Defendant officer A. Martinez, or any other custody staff. Accordingly, this appeal clearly does not suffice to exhaust the claim of excessive force against officer A. Martinez relating to an incident on March 12, 2010. Griffin, 557 F.3d at 1120

3.   Other Inmate Appeals Filed Between March 12, 2010 and July 12, 2013

Inmate appeals coordinator at PVSP, J. Morgan, declares that after a search of the inmate appeals record, there were no non-health care appeals accepted and reviewed by the appeals coordinator's office at PVSP between March 12, 2010, and June 15, 2010, by Plaintiff that referenced any use of force by correctional officer A. Martinez, or any correctional staff, against Plaintiff. (J. Morgan Decl. ¶ 6.) Morgan also searched all inmate non-health care grievances accepted and reviewed by the appeals coordinator's office at PVSP between March 12, 2010, and July 12, 2013, and Plaintiff filed only three non-health care appeals originating from PVSP that were appealed through the Director's Level Review, but none alleged that Correctional Officer A. Martinez, or any custody staff, used force against Plaintiff on March 12, 2010.

15

1   In appeal PVSP-S-10-00663, Plaintiff complained that his due process rights were violated
2 regarding the Rules Violations Report he received from non-party M. Martinez on March 12, 2010, for
3 Indecent Exposure.  Plaintiff initially signed and submitted this grievance on May 20, 2010.  It was
4 denied at the Third Level on February 28, 2011.  (J. Morgan Decl. ¶ 8; Ex. D; M. Voong Decl. ¶ 13,
5 Ex. J.)  In appeal PVSP-S-10-00889, Plaintiff complained that his due process rights were violated
6 regarding the Rules Violations Report he received for his March 10, 2010 participation in a riot.
7 Plaintiff initially signed and submitted this grievance on May 20, 2010.  It was denied at the Third
8 Level on April 13, 2011.  (J. Morgan Decl., ¶ 9, Ex. E; M. Voong Decl. ¶ 14, Ex. K.)  In appeal PVSP-
9 S-11-01168, Plaintiff complained that his due process rights were violated regarding the Rules
10 Violations Report he received from Defendant A. Martinez on May 3, 2011, for Assault on a Peace
11 Officer.  Plaintiff initially signed and submitted this grievance on July 29, 2011.  It was granted in part
12 at the Third Level on April 6, 2012.  (J. Morgan Decl. ¶ 10, Ex. F; M. Voong Decl. ¶ 15, Ex. L.)

13   It is apparent from the face of the above inmate appeals that Plaintiff did not address or exhaust
14 any issues with Defendant A. Martinez relating to the alleged use of excessive force on March 12,
15 2010.  Defendant has carried his burden in demonstrating that Plaintiff failed to exhaust the
16 administrative remedies as to his excessive force claim against Defendant A. Martinez relating to the
17 March 2, 2010, incident.  The burden now shifts to Plaintiff to provide evidence showing that "there is
18 something in his particular case that made the existing and generally available administrative remedies
19 effectively unavailable to him."  Albino, 747 F.3d at 1172.  Plaintiff has made no such showing
20 because he believes (incorrectly) that he has exhausted his administrative remedies.  Accordingly,
21 Plaintiff never alerted the prison to the nature of the wrong as to the alleged use of excessive force by
22 Defendant A. Martinez on March 12, 2010, and failed to give the CDCR a fair opportunity to
23 adjudicate the claim upon which he seeks relief against Defendant A. Martinez relating to the March
24 12, 2010, incident.  Griffin v. Arpaio, 557 F.3d at 1120; Woodford v. Ngo, 548 U.S. at 90.
25 Consequently, Plaintiff did not comply with the mandated exhaustion requirement, and Defendant's
26 motion for summary judgment should be granted as the March 12, 2010, excessive force claim.
27 ///
28 ///

## II.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment be GRANTED; and

2. Plaintiff's excessive force claim against Defendant A. Martinez relating to the incident on March 12, 2010, should be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 4, 2015**

UNITED STATES MAGISTRATE JUDGE