UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>A. MARTINEZ,<br><br>　　　　Defendant. | Case No.: 1:10-cv-01064-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>[ECF No. 66] |

Plaintiff Tony Hernandez is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Defendant declined magistrate judge jurisdiction, and this matter was therefore referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(1)(B) and Local Rule 302.[1]

Currently before the Court is Defendant's motion for summary judgment, filed January 14, 2016.

## I.

## RELEVANT HISTORY

This action is proceeding on Plaintiff's claim of excessive force arising on May 3, 2011, against Defendant Martinez.

---

[1] Plaintiff initially declined magistrate judge jurisdiction and then subsequently consented.  (ECF Nos. 6 & 56.)

1

Defendant filed a motion for summary judgment on January 14, 2016. (ECF No. 66.) Plaintiff filed an opposition on February 5, 2016, and Defendant filed a reply on March 11, 2016. (ECF Nos. 68, 69, 70, 73, 74.)

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## III.

## DISCUSSION

### A.   Summary of Plaintiff's Allegations

On April 9, 2010, Defendant A. Martinez threatened to mace Plaintiff. On May 3, 2011, Defendant A. Martinez carried out his threat to again mace Plaintiff, when he requested photocopies of his legal documents. Defendant A. Martinez opened the tray slot to Plaintiff's cell and threw the

briefs into the cell.  When Plaintiff reached down to pick up the papers, Defendant A. Martinez sprayed Plaintiff's back with mace and directed the chemical agent onto the legal documents, stating "you['re] going to remember this day walked to the top of the stairs yelling I need a team."  Plaintiff's cellmate began screaming that he could not breathe because he was allergic to make.  In response, Plaintiff began kicking the door to get medical and staff attention.  Defendant A. Martinez then returned to continue spraying more mace into the cell through the food tray slot.  The mace covered Plaintiff's face, chest, and back.

Defendant A. Martinez attempted to have Plaintiff's cellmate confirm that Plaintiff threatened Defendant A. Martinez.  However, Plaintiff's cellmate responded that A. Martinez sprayed them for no reason.  Defendant A. Martinez charged Plaintiff with assault on staff.  As a result, Plaintiff was found guilty of a 115 Rules Violation Report assault on staff.

**B.  Statement of Undisputed Facts**

1. Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) and was incarcerated at Pleasant Valley State Prison (PVSP) in Coalinga, California from April 9, 2010 through May 3, 2011.  Plaintiff was a Level IV inmate while housed at PVSP, and was housed in Administrative Segregation (AdSeg), D Facility.  (ECF No. 66-5, Declaration of M. Mayer (Mayer Decl.), Ex B [Plaintiff Dep.] at 19:20-20:12.)
2. During all times relevant to Plaintiff's second amended complaint, Defendant A. Martinez worked as the AdSeg Law Library Officer.  (ECF No. 66-3, Declaration of A. Martinez (Martinez Decl.) ¶ 1.)
3. On April 9, 2010, while housed in AdSeg, Plaintiff threw an illegal "fish line" down the tier, in an attempt to procure envelopes from another inmate.[2]  (Mayer Decl., Ex. B at 41:16-18.)
4. While Plaintiff was "fishing," Defendant was walking the tier, doing his law library rounds.  (Id. at 41:20-25; Martinez Decl. ¶ 3.)

---

[2] Plaintiff attempt to argue the reason why he threw the illegal fish line is not relevant to fact asserted.

5. Plaintiff heard Defendant walking up the stairs toward his cell, so to avoid being caught, he began pulling in his illegal fish line.[3] (Mayer Decl. Ex B at 41:20-25.)

6. Defendant, however, saw the fish line and stepped on it, so Plaintiff broke off the line.[4] (Mayer Decl. Ex B. at 41:23-42:1; Martinez Decl. ¶ 3.)

7. Defendant ordered Plaintiff to give him the remaining fish line, but Plaintiff refused and instead "chose to flush it down the toilet."[5] (Mayer Decl. Ex. B at 42:1-3; Martinez Decl. ¶ 3.)

8. Defendant saw another piece of line in Plaintiff's cell and ordered Plaintiff to surrender it; however, Plaintiff again chose to flush the fish line down the toilet, thereby, defying Defendant's second direct order. (Mayer Decl. Ex. B at 42:10-43:20; Martinez Decl. ¶ 3.)

9. Defendant did not issue Plaintiff a Rules Violation Report for this illegal "fish line" incident.[6] (Mayer Decl. Ex. B at 50:17-19; Martinez Decl. ¶ 6.)

10. For the period between April 9, 2010 and May 3, 2011, there were no other incidents between Plaintiff and Defendant even though Plaintiff was extensively using the AdSeg law library and they were in frequent contact on the tier because of Defendant's job duties as the AdSeg law library officer. (Mayer Decl. Ex. B at 54:23-55:2; Martinez Decl. ¶ 8.)

---

[3] Plaintiff's argument as to why inmates use illegal fish line is not relevant to the fact as presented. Furthermore, Plaintiff's statement regarding how "most officers" respond to illegal fish lines lacks foundation and is speculation and does not serve to place this fact in dispute. Fed. R. Evid. 602, 701.

[4] Plaintiff contends that Defendant "attempted to step on the line, Plaintiff retrieved it and flushed it." (ECF No. 70 at ¶ 6.) However, Plaintiff cannot now attempt to create a dispute of fact by contradicting his deposition testimony in which he stated that Defendant stepped on the line. (Mayer Decl. Ex B. at 41:23-42:1.)

[5] Plaintiff contends that he simply flushed it. (ECF No. 70 at ¶ 7.) Plaintiff's contention is not relevant to the fact asserted. Fed. R. Evid. 401.

[6] In response to this fact, Plaintiff contends "Defendant was hostile, with no proof of anything being agitated. Plaintiff again would not adhere to his orders, the same as when defendant emptied a can of pepper spray in Plaintiff's face while hanging unable to comply with his orders." (ECF No. 70 at ¶ 10.) Plaintiff's argument is not relevant to the fact asserted. Fed. R. Evid. 401

11. During this time, they "weren't physically or verbally having any difficulty" and Defendant was never "derogatory or anything else."[7] (Mayer Decl. Ex B at 59:15-60:8; Martinez Decl. ¶ 8.)

12. On May 3, 2011, an incident occurred between Plaintiff and Defendant related to Plaintiff's request that Defendant provide him with photocopies of his legal documents.[8] (Mayer Decl. Ex B at 55:13-19; Martinez Decl. ¶ 6.)

13. Defendant picked up Plaintiff's photocopy request from and his legal documents to make copies; however, he brought the documents back to Plaintiff's cell without photocopying them. (Mayer Decl. Ex. B at 60:12-22; Martinez Decl. ¶¶ 10-11.)

14. Responding staff were able to handcuff Plaintiff and his cellmate and remove them from the cell for decontamination. (ECF No. 22-1 at 70 & 76; Martinez Decl. ¶ 15.)

15. Plaintiff was issued a Rules Violation Report (RVR) by Defendant regarding this incident. (ECF No. 22-1 at 70 & 76; Mayer Decl. Ex. B at 72:4-10; Martinez Decl. ¶ 6.)

16. On July 19, 2011, at the hearing on this RVR, Plaintiff was found guilty of assault on a peace officer under California Code of Regulations, title 15, § 3005(d)(1), a Division B offense, and was assessed a permanent credit forfeiture of 150 days. (ECF No. 22-1 at 70, 73 & 75; Martinez Decl. ¶ 16.)

17. Plaintiff timely filed an inmate appeal regarding this incident, requesting dismissal of the RVR. At the third level of appeal, Plaintiff's RVR was reclassified as a Division D offense, assault on a peace officer by any means not likely to cause great bodily injury, and the days of good time credits forfeited were reduced, however, the RVR was not overturned or dismissed. (ECF No. 22-1 at 52, 55-56; Geringer Decl. ¶ 3.)

---

[7] Plaintiff cannot attempt to dispute this fact which is a direct quote from his deposition testimony by arguing, "[d]uring this time defendant did not continue any other threats." (ECF No. 70 at ¶ 11.)

[8] Plaintiff's elaboration of additional facts does not place this face in dispute and is not relevant to the fact as asserted.

5

18. Plaintiff's RVR conviction for the May 3, 2011 assault on a peace officer incident has never been reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. (Mayer Decl. Ex. B at 25:19-21; Geringer Decl. ¶ 3.)

19. PVSP's Operations Procedure Number 96 (OP), page 14, which governs the Unit Procedures for its AdSeg housing units 1 and 2 states: "If an inmate continually kicks … against a cell door … responding staff shall give orders to the inmate to stop his action. If the inmate refuses to stop his actions after verbal orders, custody staff is authorized to administer chemical agents against the inmate to gain compliance with the lawful verbal order."[9] (Martinez Decl. ¶ 18, Ex. A.)

20. PVSP's Operations Procedure Number 96 (OP 96), page 14, which governs the Unit Procedures for its AdSeg housing units 1 and 2 states that when an inmate takes control of a food/security port and refuses to allow staff to close and lock the food/security port, PVSP's OP 96 directs staff to: "(1) …[V]erbally order the inmate to relinquish control of the food/security port and allow staff to secure it. The officer shall issue a warning that chemicals agents will be used if he/she does not comply; and (2) If the inmate refuses to relinquish control of the food/security port after the warning and presents an immediate threat to the safety of the officer or inmate (e.g. the inmate is battery or attempting to batter staff or inmates in the area), the officer is authorized a single 3-second burst of chemical agents against the inmate to secure the food/security port." (Martinez Decl. ¶ 19, Ex. A.)

21. Unsecured food ports are considered significant security threats because they provide an inmate with unrestricted access to staff and/or inmates located outside the cell, allowing them opportunities to slash, stab, gas, or otherwise harm unsuspecting staff or inmates. (Martinez Decl. ¶ 17.)

22. Staff cannot leave unlocked or open food ports unattended, therefore, until the food port if secured, staff must remain positioned outside that cell until they are able to

---

[9] The fact that Plaintiff contends Defendant did not warn him pepper spray would be used prior to its administration does not place this fact in dispute.

6

safely secure the food port, which can be affected through the use of chemical agents. PVSP's AdSeg's Operating Procedure Number 96, states that "at no time will the food/security port be left unattended when unlocked or open." (Martinez Decl. ¶ 17, Ex. A.)

### C. Findings on Defendant's Motion

Defendant moves for summary judgment because (1) his actions were objectively reasonable based on Plaintiff's non-compliant behaviors; (2) his actions were intended to alleviate a security threat and were without malice; (3) his actions were objectively reasonable based upon the situation, such that he is entitled to qualified immunity; and (4) Plaintiff's excessive force claim is barred by Heck and Edwards.

#### 1. Excessive Force in Violation of the Eighth Amendment

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted); Furnace v. Sullivan, 705 F.3d 1021, 1028 (9th Cir. 2013). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident, Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted); Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley v. Albers, 475 U.S. 312, 321 (1986). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 559 U.S. at 37-38. The Eighth

1  Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional
2  recognition de minimis uses of physical force.  Hudson, 503 U.S. at 9-10.

3        Defendant argues that the allegations in the complaint demonstrate that Plaintiff's claim of
4  excessive force arises from the exact incident that resulted in his RVR conviction for assault on a
5  peace officer.  (ECF No. 22-1 at 72-73.)  Defendant claims (as cited in finding Plaintiff guilty of the
6  RVR) that Plaintiff thrust his hands through the food port and yelled, "get this guy out of here and get
7  me a sergeant."  Defendant ordered Plaintiff to remove his hands from the food port, but Plaintiff did
8  not comply with Defendant's order, rather, he continued to yell and be verbally abusive.  Plaintiff was
9  again ordered to remove his hands from the food port and he complied; however, when Defendant
10 moved to secure the food port, Plaintiff lunged forward and began kicking at it.  Defendant could not
11 close and secure the food port.  Defendant ordered Plaintiff to stop kicking at the door and when he
12 did not stop, Defendant administered one continuous burst of pepper spray.  Plaintiff then turned away
13 from the door and stopped kicking it, which allowed Defendant to secure the food port and summon
14 assistance.

15       In contrast, Plaintiff claims that his disciplinary conviction was false as he did not engage in
16 the conduct as alleged by Defendant Martinez.  Plaintiff claims that on May 3, 2011, Defendant threw
17 his legal papers through the food port on the floor and when Plaintiff reached down to pick them up,
18 Defendant "shot [him] with a little shot of pepper spray, mace, on [his] back" telling Plaintiff he was
19 "going to remember this day."  (Mayer Decl. Ex. B at 64:10-23.)  As Defendant left the cell and had
20 closed the food port tray, Plaintiff's cellmate began to scream because he could not breathe due to the
21 mace.  (Id. at 66:12-20.)  In response, Plaintiff began kicking the cell door and yelled for assistance.
22 (Id. at 66:22-25.)  Defendant Martinez sees Plaintiff kicking the door and his cellmate screaming and
23 in response yells to "[g]et a team up here.  Turns around, comes back, opens up the tray slot, and he
24 began to empty a can of mace on [Plaintiff]."  (Id. at 67:17-21.)  Plaintiff never put his hands through
25 the food port and therefore did not prevent it from being closed properly.  (Id. at 71:21-22.)  Without
26 warning, Defendant sprayed an entire canister of pepper spray in Plaintiff's cell.

27       As an initial matter, Defendant Martinez does not admit or deny the fact that he threw
28 Plaintiff's legal papers in his cell and dispersed an initial shot of pepper spray through the food port

tray of Plaintiff's cell.  Plaintiff admits that he subsequently kicked the cell door (while the food port tray was closed) to gain the attention and response of a sergeant or lieutenant to assist his cellmate.  Under Plaintiff's version, Defendant thereafter returned to the cell, opened the food port tray, and without warning shot a continuous blast of pepper spray until the can was empty.

There are disputed issues of fact as to whether Defendant used excessive force by initially shooting pepper spray into Plaintiff's cell hitting his back and then subsequently administering an entire can of pepper spray on Plaintiff because he kicked the cell door to obtain the assistance of a sergeant or lieutenant.  "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  Furnace, 705 F.3d at 1026 (quoting Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011)).  Thus, whether Plaintiff committed any specific act which could support a reasonable belief that spraying an entire canister of pepper spray was necessary hinges on disputed facts, and a genuine issue of material fact exists regarding the relationship between the need for force (pepper spray) and the amount of force used on Plaintiff.   Accordingly, the Court cannot grant summary judgment in favor of Defendant Martinez.

       2.     Qualified Immunity

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted).  Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U. S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741.

Defendant's argument for qualified immunity rests on his disputed version of the events that took place on May 3, 2011 and his claim that no constitutional violation occurred. As stated above, the material facts are in genuine dispute as to whether there was a constitutional violation. The disputed issues of fact preclude a finding of qualified immunity in favor Defendant. See LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000) ("If … there is a material dispute as to the facts regarding what the officer or the plaintiff actually did, the case must proceed to trial.") Accordingly, Defendant's motion for summary judgment based on qualified immunity should be denied.

3.     Favorable Termination Rule

Defendant argues that Plaintiff's excessive force claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994). Under Heck, a prisoner may not proceed on a claim for damages under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487; Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applying Heck to a prison disciplinary hearing where good-time credits were affected). In such a case, Plaintiff is foreclosed from proceeding absent proof that the conviction or sentence has been reversed, expunged or invalidated. Id. at 486-487. However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed …." Id. at 487. As an illustration of the rule's application, the Heck Court explained that an individual convicted of resisting arrest, defined as intentionally preventing a peace officer from affecting a lawful arrest, would be barred from bringing a damages claim for unlawful arrest. Id. at 487 n. 6. That result is compelled by the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the arrest. Id.

Here, Plaintiff's excessive force claim is not barred by Heck since it is based on allegations that the force used was unreasonable in response to Plaintiff's actions. The factual context in which the force was used is disputed. Thus, even though Plaintiff was found guilty assaulting a peace officer, Defendant could, if Plaintiff's testimony is believed, nevertheless be found liable for using force "maliciously and sadistically" with the intent to cause Plaintiff harm. When force is necessary, only reasonable force that does not violate the Eighth Amendment may be used. Under the evidence presented, a reasonable factfinder could conclude both that Plaintiff's conduct on May 3, 2011, violated California Code of Regulations, title 15, section 3323(f) and Defendant used excessive force in response. The Ninth Circuit has clarified that two factual contexts can exist during one continuous transaction such that a successful § 1983 claim and a conviction for resisting arrest may coexist without running afoul of Heck. See Hooper v. County of San Diego, 629 F.3d 1127, 1132 (9th Cir. 2011) ("Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second

giving rise to civil liability on the part of the arresting officer."). Plaintiff's claim that Defendant Martinez gratuitously sprayed pepper spray twice is therefore cognizable under section 1983.

Further, Plaintiff submits (and Defendant does not present evidence otherwise) that he is serving an indeterminate life sentence. (ECF No. 69, Opp'n at 2-3.) As a life-term prisoner, the 90-day loss of credits will have no effect on Plaintiff's maximum sentence. Even if the loss of credits has affected Plaintiff's minimum eligible parole date (MEPD), a change in Plaintiff's MEPD will not necessarily affect the length of his sentence. Defendant has failed to demonstrate how the loss of credits resulting from the disciplinary conviction will have any impact on the length of Plaintiff's confinement. Ramirez, 334 F.3d at 858 ("[W]here … a successful § 1983 action would not necessarily result in an earlier release from incarceration … the favorable termination rule of Heck and Edwards does not apply.") Accordingly, Defendant's motion for summary judgment should therefore be denied on this ground.

## IV.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendant's motion for summary judgment be DENIED in its entirety.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may

///
///
///
///
///
///
///
///

1  result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014)
2  (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

4  IT IS SO ORDERED.

5  Dated:   **April 8, 2016**

6                                              UNITED STATES MAGISTRATE JUDGE